Lee Litigation Group, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VLADIMIR SVIRIDOV,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

              Plaintiff,

              v.

ONE FIFTY FIFTY SEVEN CORP.
   d/b/a RUSSIAN TEA ROOM,
RTR FUNDING GROUP, INC.,
GERALD LIEBLICH,
KEN BIBERAJ, and
HASAN BIBERAJ,

              Defendants.

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiff, VASIL GOBEJISHVILI ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against Defendants, ONE FIFTY FIFTY SEVEN CORP. d/b/a RUSSIAN TEA ROOM, RTR FUNDING GROUP, INC., (the "Corporate Defendants"), GERALD LIEBLICH, KEN BIBERAJ and HASAN BIBERAJ, (together the "Individual Defendants") (the Corporate Defendants and Individual Defendants are each individually referred to as a "Defendant" and collectively "Defendants") and states as follows:

## INTRODUCTION

1.  Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid wages due to time-shaving, (4) illegally retained gratuities due to Defendants' illegal tip-pooling scheme, (5) liquidated damages, and (6) attorneys' fees and costs.

2.  Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid wages due to time-shaving, (4) unpaid spread of hours premium, (5) illegally retained gratuities due to Defendants' illegal tip-pooling scheme, (6) improper meal credit deductions, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.  Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.  Plaintiff, VLADIMIR SVIRIDOV, is a resident of Kings County, New York.

6.  Corporate Defendants:

(a) Defendant, ONE FIFTY FIFTY SEVEN CORP., is a domestic business corporation organized under the laws of New York and operates the "Russian Tea Room" restaurant with a principal place of business located at 150 W 57th Street, New York, New York 10019, and an address for service of process located at 234 W 56th Street, New York, New York 10019.

2

(b) Defendant, RTR FUNDING GROUP INC., is a domestic business corporation organized under the laws of New York with a principal place of business located at 150 W 57th Street, New York, New York 10019, and an address for service of process located at 234 W 56th Street, New York, New York 10019. RTR FUNDING GROUP INC. is the holding company of the Russian Tea Room restaurant.

7.   Individual Defendants:

(a) Defendant GERALD LIEBLICH is the owner and principal of the Russian Tea Room restaurant. GERALD LIEBLICH exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to GERALD LIEBLICH regarding any of the terms of their employment, and GERALD LIEBLICH would have the authority to effect any changes to the quality and terms of employees' employment. GERALD LIEBLICH ensured that employees effectively serve customers and that the business is operating efficiently and profitably. GERALD LIEBLICH exercised functional control over the business and financial operations of all Corporate Defendants. GERALD LIEBLICH had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(b) Defendant KEN BIBERAJ is the Vice President and manager of the Russian Tea Room restaurant. KEN BIBERAJ exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii)

determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to KEN BIBERAJ regarding any of the terms of their employment, and KEN BIBERAJ would have the authority to effect any changes to the quality and terms of employees' employment. KEN BIBERAJ ensured that employees effectively serve customers and that the business is operating efficiently and profitably. KEN BIBERAJ exercised functional control over the business and financial operations of all Corporate Defendants. KEN BIBERAJ had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(c) Defendant HASAN BIBERAJ is the President, CEO and manager of the Russian Tea Room restaurant. HASAN BIBERAJ exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to HASAN BIBERAJ regarding any of the terms of their employment, and HASAN BIBERAJ would have the authority to effect any changes to the quality and terms of employees' employment. HASAN BIBERAJ ensured that employees effectively serve customers and that the business is operating efficiently and profitably. HASAN BIBERAJ exercised functional control over the business and financial operations of all Corporate Defendants. HASAN BIBERAJ had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

8.   At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

9.   At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

10. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including servers, bussers, runners, bartenders, cooks, line-cooks, food preparers, dishwashers and hostesses, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all hours worked, including at the proper overtime premium for hours worked in excess of forty (40) per workweek, due to a policy of time-shaving.  Furthermore, a subclass of FLSA Collective Plaintiffs who were tipped employees comprised of servers, bussers, runners, and bartenders (the "Tipped Subclass"), also suffered from Defendants' illegal retention of gratuities and failure and refusal to pay them the proper minimum wage and the proper overtime rate due to an invalid tip credit deduction.

13.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this

action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

14.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including servers, bussers, runners, bartenders, cooks, line-cooks, food preparers, dishwashers and hostesses, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

15.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of servers, bussers, runners, and bartenders ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and Tipped Subclass.

17. Plaintiff's claims are typical of those claims, which could be alleged by any member

6

of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failure to compensate Class members for all hours worked, including at the proper overtime premium for hours worked in excess of 40 per workweek, due to a policy of time-shaving, (ii) failure to pay the spread of hours premium to Class members when their workdays exceeded 10 hours, (iii) improper meal credit deduction from Class members' compensation and (iv) failure to provide proper wage notice and wage statements to Class members. Tipped Subclass members were also subject to Defendants' failure and refusal to pay them the proper minimum wage and the proper overtime rate for all hours worked in excess of 40 per workweek, due to an invalid tip credit deduction. Defendants were not entitled claim any tip credit under the NYLL because they failed to satisfy all statutory requirements for taking a tip credit. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

18.  Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

21. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e) Whether Defendants failed to properly compensate Class members for all hours worked due to a policy of time-shaving;

f) Whether Defendants failed to compensate Class members their overtime premium for all hours worked in excess of 40 per workweek, due to a policy of time-shaving;

g) Whether Defendants properly provided notice to Plaintiff and all Tipped Subclass members that Defendants were taking a tip credit;

h) Whether Defendants informed Plaintiff and Tipped Subclass members in wage statements of the amount of tip credit allowance claimed for every pay period;

i) Whether Defendants implemented an improper tip pool arrangement;

j)   Whether Defendants retained gratuities from Plaintiff and the Tipped subclass;

k)   Whether Defendants claimed a tip credit in excess of the statutory amount permissible;

l)   Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

m)  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

n)   Whether Defendants paid Plaintiff and Class members spread of hours premium when their workdays exceeded ten (10) hours;

o)   Whether Defendants improperly deducted a meal credit from Plaintiff's and Class members' compensation;

p)   Whether Defendants gave proper wage notices at the beginning of employment and annually thereafter to Plaintiff and Class members as required under NYLL; and

q)   Whether Defendants gave proper wage statements that properly informed Plaintiff and Class members of their hours worked as required under NYLL.

**STATEMENT OF FACTS**

22.  In or about June 2014, Plaintiff, VLADIMIR SVIRIDOV, was hired by Defendants to work as a server for Defendants at their "RUSSIAN TEA ROOM" restaurant located at 150 W 57th Street, New York, New York 10019.  Plaintiff VLADIMIR SVIRIDOV was employed by Defendants until in or around January 2017.

23.  During Plaintiff's employment, his scheduled varied from week to week. Depending on how busy the restaurant was during any given time, Plaintiff worked anywhere from 30 to 55 hours per week. He worked from 4 to 7 days per week. Defendants' restaurant offered shifts from 7:00am-10:30am (breakfast), 11:00am-4:30pm (lunch), and 4:30pm-11:30pm (dinner). From the start of Plaintiff's employment with Defendants until in or around the first half of 2015, Plaintiff was occasionally scheduled to work the breakfast shift. In or around 2015, Defendants stopped serving breakfast. Throughout Plaintiff's employment, Plaintiff would regularly work a double shift. On such days, he would work more than 10 hours. FLSA Collective Plaintiffs and Class members worked similar hours that regularly exceeded forty (40) hours per week.

24.  During Plaintiff's employment with Defendants, Plaintiff was paid the following hourly rates:

> a.  Throughout 2014 and 2015, Plaintiff was paid $5.00 an hour, with an overtime rate of $9.00 in 2014 and $9.375 in 2015.
>
> b.  Throughout 2016 and 2017, Plaintiff was paid $7.50 per hour.

FLSA Collective Plaintiffs and Class members, including the Tipped Subclass, were similarly compensated at an hourly rate for all hours worked.

***Time-shaving:***

25.  At all times, Plaintiff SVIRIDOV was required to wear uniforms mandated by Defendants.  When he began his shift, Plaintiff SVIRIDOV was not permitted to clock-in until he finished changing into his uniform and until his scheduled work time.  Due to Defendants' policy requiring employees to be dressed in uniform prior to their start time in order to not be considered as arriving late, Plaintiff would arrive at work 20 to 30 minutes prior to his start time. It was necessary to arrive so early because the locker room where employees could change was

small and would often be full, in which case Plaintiff and other employees would have to wait on line before changing. Even after changing into this uniform, Plaintiff would be required to wait until his scheduled time to clock in. During this gap time, Plaintiff was frequently asked to perform work tasks. Plaintiff was also required to clock out before he changed out of his uniform at the end of his shift. As a result, Plaintiff would remain in the restaurant for an additional 20 to 30 minutes before he could go home. Such time-shaving policy with regards to uniform resulted in approximately 40 to 60 minutes of unpaid compensation each day he worked.

26.  Plaintiff was required to also participate in employee meetings while off-the-clock. Such meetings would take place either after a lunch shift or before a dinner shift. Such time-shaving with regards to unpaid meetings would result in approximately 30 minutes of unpaid compensation each time.

27.  Plaintiff was required to clock-out for short breaks, even if such breaks were under 20 minutes. For example, Plaintiff was required to clock-out for short breaks, including for any time that he had to use the restroom. Such time-shaving policy with regards to breaks resulted in approximately 60 minutes of unpaid compensation each day he worked.

28. In addition, on occasion, when Plaintiff was already clocked-out, Defendants requested that he continue working to finish work tasks, including removing trash from the bar to the kitchen, taste-testing food, and moving tables. Because of Defendants' policy of time shaving, Claimant did not properly receive compensation for all hours worked, and on the weeks in which his regular hours had already exceeded 40 hours per week, the unpaid hours resulted in unpaid overtime hours.

29. Such policy of time shaving applied to all non-exempt employees. Because of Defendants' policy of time shaving, Plaintiff and Class members did not properly receive

compensation for all hours worked, and on the weeks in which their regular hours had already exceeded 40 hours per week, the unpaid hours resulted in unpaid overtime hours.

***Invalid Tip Credit:***

30.   Plaintiff and other members of the Tipped Subclass did not receive a proper tip credit notice. Defendants failed to properly inform Plaintiff and other tipped employees that their tips would be used as a credit toward the minimum wage. Moreover, Plaintiff and other tipped employees' wage statements did not show the amount of tip credit claimed for each relevant pay period.

31.   Defendants also implemented an improper tip-pooling arrangement, which was not agreed upon by all tipped employees. Defendants' tip pool is based on a points system, in which servers were assigned 10 points, runners were assigned 7 points, bussers were assigned 6.5 points and 4% of the tips were assigned to the bar staff. However, management would arbitrarily shift the number of points for certain individuals. For example, if they favored a certain employee, they would raise his points designation beyond the maximum amount described above. In addition, the tip pool was such that Plaintiff and other tipped employees would lose tips that they earned when their shift ended if the table that they were serving failed to close their check. For example, when Plaintiff worked the lunch shift, and his shift ended at 4:30pm, the table was transferred from the lunch to dinner shift and he would not be allotted any of the tips from the table that he was serving during the lunch hour. Plaintiff and other Tipped Subclass members were not made aware, did not agree to, and could not alter the changes to the points system of the tip pool, which management unilaterally implemented. As such, the tip pool was invalid, which in turn, invalidated the tip credit deduction. Defendants' tip pool allocation sheets also provided a tip allocation to barback bussers, however, there was no such position at Respondents' restaurant.

32.   Defendants paid Plaintiff and the Tipped Subclass at the "tip credit" minimum wage. Defendants, however, were not entitled to claim any tip credits under the FLSA or NYLL, because they (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform tipped employees that the tip credit claimed by Respondents cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by tipped employees are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless Plaintiff and the Tipped Subclass were informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) illegally retained gratuities, (vii) implemented an invalid tip pooling, (viii) failed to accurately track daily tips earned or maintain records thereof, (ix) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (x) failed to provide a proper wage statement with every payment of wages informing Claimant of the amount of tip credit deducted for each payment period, in violation of the NYLL.

33.   For days when Plaintiff worked the breakfast shift, Defendants failed to remit tips earned by Plaintiff to him. Throughout his employment, Plaintiff and other tipped employees did not receive tips earned during the breakfast shift.

***Unpaid Spread of Hours:***

34. Plaintiff and Class members regularly worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class members the spread of hours premium for workdays that exceeded ten hours in length.

*Improper Meal Credit:*

35.   Defendants improperly claimed a meal credit in violation of the New York Labor Law. Plaintiff and Class members were frequently unable to eat because they did not have free and clear meal breaks. Defendants claimed meal credit for meals that were not provided, and Class members were not provided meal options meeting the regulatory requirements, in violation of the NYLL requirements.

36.   Defendants deducted $3.00 per shift from employees' wages for meals.

37.   Frequently, when the restaurant was busy, Plaintiff would not have time for a meal break at all, or would only be able to take a 20 to 30 minute break. During such shifts, the meal credit was still deducted from his compensation.

38.   Employees were provided meals, but such meals did not properly include all the necessary categories of food groups required for each meal. Each meal is required to provide at least one option from each of the following groups: (i) fruits or vegetables; (2) grains or potatoes; (3) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk or juice. Generally, employees were provided only the following as meals:

        a.   Breakfast Shift: Eggs and fries;

        b.   Brunch Shift: Salad and fries;

        c.   Dinner Shift: Salad, Rice and Chicken.

39.   On a regular basis, Plaintiff and Class members were provided with only pizza.

40.   Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to a policy of time-shaving.

41. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class members for all overtime hours worked due to a policy of time-shaving.

42. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to the Plaintiff and Tipped Subclass members due to an invalid tip credit allowance.

43. Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime premium to the Plaintiff and Tipped Subclass members, due to an invalid tip credit.

44. Defendants knowingly and willfully operated their business with a policy of not paying the spread of hours premium in violation of the New York Labor Law. Plaintiff's and Class members' workdays regularly exceeded ten (10) hours.

45. Defendants knowingly and willfully operated their business with a policy of not providing employees with proper wages statements as required under the New York Labor Law. Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiff and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation. Defendants also failed to provide proper wage notices at the beginning of employment of Plaintiff and Class members, or annually thereafter.

46.   Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

47. Plaintiff realleges and reavers Paragraphs 1 through 46 of this class and collective action Complaint as if fully set forth herein.

48. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

49. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

50. At all relevant times, the Corporate Defendants had gross annual revenues in excess of $500,000.

51. At all relevant times, the Defendants engaged in a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all hours worked due to a policy of time-shaving.

52. At all relevant times, the Defendants engaged in a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs overtime premium for all hours worked in excess of 40 hours per workweek due to a policy of time-shaving.

53. At all relevant times, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and Tipped Subclass members for their hours worked, due to an invalid tip credit deduction.

54. At all relevant times, the Defendants had a policy and practice of refusing to pay the proper overtime rate to Plaintiff and Tipped Subclass members for their hours worked in excess of 40 hours per week, due to an invalid tip credit deduction. At all relevant times, Defendants were not entitled to claim any tip credits under the FLSA.

55. At all relevant times, Defendants had a policy and practice of illegally retaining gratuities.

56. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

57. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA with respect to the tip credit.

58. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

59. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of illegally retained gratuities, unpaid minimum wages and unpaid overtime wages, plus an equal amount as liquidated damages.

60. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

61. Plaintiff realleges and reavers Paragraphs 1 through 60 of this class and collective action Complaint as if fully set forth herein.

62. At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

63. At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by refusing to pay them for all hours worked due to a policy of time-shaving.

64. At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by refusing to pay them overtime premium for all hours worked in excess of 40 hours per workweek due to a policy of time-shaving.

65. Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them minimum wages in the lawful amount for all hours worked. Defendants were not entitled to claim any tip credits under the NYLL.

66. Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them the proper overtime rate of time and one-half of the minimum wage required by the NYLL, due to the invalid tip credit deduction. At all relevant times, Defendants were not entitled to claim any tip credits under the NYLL.

67. Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by illegally retaining gratuities.

19

68. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper spread of hours premium when their workdays exceeded ten (10) hours.

69.     Defendants willfully violated the rights of Plaintiff and Class members by improperly claiming a meal credit. Defendants' meal credit was invalid because Defendants failed to provide the requisite time in which to eat, Defendants claimed meal credit for meals that were not provided, Respondents claimed a meal credit in excess of the statutory amount permissible, and Class members were not provided the requisite meal options meeting the regulatory requirements, in violation of the NYLL requirements.

70. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to tipped employees as required under the New York Labor Law.  Employers are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because the tip credit allowance was never included in any wage statements to tipped employees. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and the proper compensation.

71. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices at the beginning of employment, with each change in payrate, and annually thereafter under the New York Labor Law.

72. Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid compensation due to time-shaving, unpaid minimum wage, unpaid overtime wage, illegally retained gratuities, spread of hours premium, meal credits reimbursement, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

    a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

    b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c. An award of unpaid compensation due under the FLSA and the New York Labor Law;

    d. An award representing illegally retained gratuities due under the FLSA and the New York Labor Law;

    e. An award of unpaid spread of hours premium due under the New York Labor Law;

    f. A reimbursement of the improper meal credit deductions due under the New York Labor Law;

    g. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law notice and statement requirements;

    h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation due to time-shaving, minimum wage and overtime wage pursuant to 29 U.S.C. § 216;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation due to time-shaving, minimum wage, overtime wage, and spread of hours premium, pursuant to the New York Labor Law;

j.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiff;

l.   Designation of this action as a class action pursuant to F.R.C.P. 23;

m.   Designation of Plaintiff as Representative of Class; and

n.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: December 31, 2018


Respectfully submitted,


LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By: ___/s/ C.K. Lee_____
C.K. Lee, Esq. (CL 4086)